[Cite as *In re Molitor*, 2013-Ohio-525.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY


IN THE MATTER OF:                     :

    ESTATE OF JOHN A. MOLITOR          :          CASE NO.   CA2012-06-013

                               :          O P I N I O N
                                          2/19/2013

                                 :

                                 :

                                 :


APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. 2002-1171


Lawrence J. Brokamp, 3734 Eastern Avenue, Cincinnati, Ohio 45226, for appellee, Estate of John A. Molitor

Ravi Suri, 850 Euclid Avenue, Suite 804, Cleveland, Ohio 44114, for appellants, Jackie Rothwell and Frank Molitor

Steve Molitor, 6211 U.S. Hwy. 98 N., Lakeland, Florida, 33809, pro se

Ronald Molitor, 4665 68th Street, LaMesa, California, 19141, pro se

Barbara Vogelpohl, 10696 Hopping Road, Harrison, Ohio 45030, pro se


**HENDRICKSON, P.J.**

{¶ 1}   Defendants-appellants, Jackie Rothwell and Frank Molitor, appeal a decision of

the Brown County Court of Common Pleas, Probate Division, distributing the net proceeds of

a wrongful death claim filed on behalf of their deceased father, John A. Molitor, to their mother, Lilly H. Molitor. For the reasons discussed below, we reverse the probate court's decision and remand this matter for further proceedings.

{¶ 2} John A. Molitor died intestate on December 28, 2001 as a result of asbestos-related health problems. He was survived by his wife, Lilly, and their five children, Barbara Vogelpohl, Steve Molitor, Ronald Molitor, Jackie Rothwell, and Frank Molitor. Asbestos-related wrongful death claims were brought in the state of Texas. In September 2002, an estate was opened in the Brown County Probate Court for the sole purpose of pursuing the wrongful death claims. Vogelpohl and Rothwell were originally appointed as co-administrators of the estate, and Rothwell, who resided in Alabama, opened a bank account for the estate in Alabama. In May 2007, Rothwell was removed as administrator and was ordered to close the Alabama estate account and transfer the funds to an estate account opened in Ohio.[1]

{¶ 3} In February 2008, Vogelpohl filed an Application to Approve Settlement and Distribution of Wrongful Death and Survival claims after John's estate was awarded $650,232.57. The application sought to have the wrongful death proceeds distributed as follows: $216,744.22 awarded to Lilly and $86,697.67 awarded to each of the five children. On February 21, 2008, the magistrate approved the report of distribution of wrongful death proceeds as set forth in Vogelpohl's application. Lilly, Steve, Ronald, and Vogelpohl all filed objections, stating that they took "exception to the amount of the settlement and to the net proceeds alleged to have been distributed to beneficiaries." A hearing on the objections was held on April 15, 2008. Four days later, on April 19, 2008, Lilly died.

---

1. There were allegations that Rothwell had misappropriated estate assets. These allegations were later litigated in the state of Alabama.

{¶ 4} On April 22, 2008, the probate court sustained the objections to the magistrate's February 21, 2008 entry. The court ordered the February 21, 2008 entry approving the report of distribution of wrongful death proceeds null and void, and further ordered that "any future proceeds of the wrongful death settlement subject to the jurisdiction of this Court shall be * * * distributed in their entirety to the surviving spouse Lilly H. Molitor."[2] This entry was never served on the parties.

{¶ 5} On April 24, 2008, the magistrate ordered that John's estate be terminated "by virtue of the fact that any and all assets of this Estate were bequeathed and devised by intestate succession ([R.C.] 2105.06(B)) to said surviving spouse Lilly Molitor; [and], that further, since she is a legal resident of Alabama, no further action need be taken in this Estate." Although this entry was never signed by the probate court judge, nor ever served on the parties, John's estate was closed.

{¶ 6} John's estate was opened briefly in 2009 for the limited purpose of executing documents necessary for the continued pursuit of the asbestos-related claims pending in the state of Texas. Then, in 2011, Vogelpohl sought to reopen the estate and have herself reappointed as administrator after additional wrongful death proceeds were received. On February 14, 2011, the magistrate filed an entry reopening the estate and appointing Vogelpohl as administrator "for purposes of executing any and all documents relating to ongoing wrongful death litigation and any other necessary purposes in order that said matters may be settled and that any proceeds shall be distributed to the Lilly H. Molitor Estate." After appellants filed a motion to deny the appointment of Vogelpohl as the administrator of John's estate, the court appointed Ellen A. Molitor and Charlotte M. Molitor as co-administrators of

---

2. In its April 22, 2008 entry, the probate court erroneously referred to the February 21, 2008 entry as the entry approving the "final account." From the record, it is clear that the court was referring to the magistrate's February 21, 2008 entry approving the report of distribution of wrongful death proceeds.

the estate.

{¶ 7} Ellen and Charlotte filed a "Request for Instruction from the Court" on September 9, 2011. Within their request for instruction, the co-administrators sought clarification as to whether "all future settlement proceeds [should] be paid to the Estate of Lilly Molitor pursuant to this Court's Order."[3] A hearing on the request for instruction was held before the magistrate on November 2, 2011. That same day, the magistrate issued an entry ordering that all future proceeds be paid to Lilly's estate.

{¶ 8} Appellants timely objected to the magistrate's November 2, 2011 order, arguing in relevant part, that the probate court erred by (1) distributing the wrongful death proceeds pursuant to intestate succession under R.C. 2105.06(B) rather than by the equitable considerations expressed within the wrongful death distribution statute, R.C. 2125.03(A), (2) failing to serve the parties with various entries entered by the court, including the April 24, 2008 entry, and (3) neglecting to adopt the magistrate's April 24, 2008 decision, therefore failing to comply with Civ.R. 53(D). As a result of these alleged errors, appellants sought to have the probate court vacate its April 22, 2008 order and the magistrate's decisions from April 24, 2008 and November 2, 2011, so that the court could distribute all wrongful death proceeds received by John's estate in accordance with R.C. 2125.03(A).

{¶ 9} On May 1, 2012, the probate court overruled appellants' objections to the November 2, 2011 order. In ruling on appellants' objections, the probate court noted that it was "now considering and reviewing on an objections basis" the April 24, 2008 magistrate's decision, and that the "April 24, 2008 Entry is generally consistent as to distribution of assets/proceeds with the April 22, 2008 Entry, which was signed by [the probate judge]." The probate court further stated that in regards to the distribution of wrongful death proceeds,

---

3. An exhibit attached to Ellen and Charlotte's Request for Instruction from the Court indicates that from 2003 to 2011, John's estate received $904,920.14 as a result of the asbestos-related wrongful death claims.

- 4 -

"§2125.03 Ohio Revised Code speaks of an equitable adjustment, and application of §2105.06(B) in distributing the entirety of the proceeds to the surviving spouse appears to be inherently equitable." The court declined to vacate its April 22, 2008 order or the magistrate's decisions from April 24, 2008 and November 2, 2011, and instead reiterated its prior holding that all wrongful death proceeds be distributed to Lilly's estate.

{¶ 10} Appellants' appealed the probate court's decision, raising two assignments of error.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE PROBATE COURT ERRED BY DIVIDING WRONGFUL DEATH SETTLEMENT PROCEEDS AS INTESTATE ESTATE PROPERTY UNDER R.C. 2105.06 INSTEAD OF USING THE EQUITABLE FACTORS SPECIFIED BY R.C. 2125.03.

{¶ 13} In their first assignment of error, appellants contend that the probate court erred, as a matter of law, in applying R.C. 2105.06 to the distribution of the wrongful death proceeds. Appellants contend that the probate court, pursuant to R.C. 2125.03, was required to determine the injury and loss sustained by each beneficiary before distributing the wrongful death proceeds.

{¶ 14} As an initial matter, we note that throughout this case, the magistrate and judge failed to comply with the formalities of Civ.R. 53 when issuing their respective decisions. Although the April 22, 2008 entry awarding the wrongful death proceeds to Lilly was signed by the magistrate and adopted by the probate judge in compliance with Civ.R. 53(D)(4)(e)(i), there is no indication either in the record or in the transcript of the docket and journal entries that the entry was ever served on the parties as required by Civ.R. 53(D)(3)(a)(iii). The magistrate's decision from April 24, 2008 also failed to comply with the requirements of Civ.R. 53(D) as it did not "indicate conspicuously that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party

- 5 -

timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b)." Civ.R. 53(D)(3)(a)(iii). Further, although the April 24, 2008 entry was relied upon by the probate court in subsequent proceedings, it was never expressly adopted by the court, in contravention of Civ.R. 53(D)(4)(a), and it was never served on the parties.

{¶ 15} We have previously held that when the trial court has failed to comply with the requirements set forth in Civ.R. 53(D), this court is not precluded, on appeal, from addressing the merits of a party's assigned errors. *See Chibinda v. Depositors Ins.*, 12th Dist. No. CA2010-09-254, 2011-Ohio-2597, ¶ 37. As the probate court failed to comply with Civ.R. 53(D) in issuing the April 22, 2008 and April 24, 2008 decisions, we find that we are not precluded from reviewing appellants' arguments regarding the distribution of wrongful death proceeds.

{¶ 16} Generally, a probate court's distribution of wrongful death proceeds is reviewed for an abuse of discretion. *See In re Estate of Cochran*, 12th Dist. No. CA2000-05-030, 2001 WL 273644 at *1 (Mar. 19, 2001); *In re Estate of Barnett-Clardy*, 10th Dist. No. 08AP-386, 2008-Ohio-6126, ¶ 22. However, the issue of whether the probate court applied the correct legal standard in distributing the wrongful death proceeds raises a question of law, which we review de novo. *Turner v. Langenbrunner*, 12th Dist. No. CA2003-10-099, 2004-Ohio-2814, ¶ 12.

{¶ 17} A probate court's authority to apportion wrongful death proceeds arises out of R.C. 2125.03(A)(1). *See In re Estate of Barnett-Clardy* at ¶ 18. "R.C. 2125.03 directs the probate court to distribute wrongful death settlement proceeds 'in such manner as is equitable, having due regard for the injury and loss to each beneficiary resulting from the death and for the age and condition of the beneficiaries.'" *In re Estate of Cochran*, 2001 WL 273644 at *2, quoting R.C. 2125.03(A)(1). The surviving spouse and children of the decedent are "rebuttably presumed to have suffered damages by reason of the wrongful

death." R.C. 2125.02(A)(1); *In re Estate of Coman*, 7th Dist. No. 07-MA-181, 2008-Ohio-2266, ¶ 16. In applying R.C. 2125.03(A)(1), the probate court should distribute wrongful death proceeds in an equitable manner "without regard to the statute of dissent and distribution, and without regard to any precise mathematical formulae." *In re Estate of Barnett-Clardy* at ¶ 22, quoting *In re Estate of Straszheim*, 2d Dist. No. 18046, 2000 WL 353172 at *2 (Apr. 7, 2000). The probate court may, however, draw guidance from those factors set forth in R.C. 2125.02(B). *In re Estate of Cochran* at *2.

{¶ 18} The record indicates that the wrongful death proceeds were ordered to be distributed to Lilly without any discussion of the parties' injuries and losses as a result of John's death. Although the probate court held a hearing on April 15, 2008 to discuss the parties' various objections to the application to approve wrongful death proceeds filed by Vogelpohl in February 2008, there is no indication that the parties were permitted to introduce evidence regarding their respective injuries or losses. The probate court's April 22, 2008 Entry ordering "any future proceeds of the wrongful death settlement * * * distributed in their entirety to the surviving spouse Lilly H. Molitor" is silent as to consideration of the parties' injuries or losses pursuant to R.C. 2125.03(A)(1). Further, the magistrate's April 24, 2008 entry clearly indicates that the court was distributing the wrongful death proceeds to Lilly by intestate succession pursuant to R.C. 2105.06(B), rather than by equitable considerations as required by the wrongful death distribution statute, R.C. 2125.03(A)(1). Distribution of the wrongful death proceeds without consideration of the parties' injuries and loss pursuant to R.C. 2125.03(A)(1) was improper as a matter of law.

{¶ 19} We hereby find that the probate court erred in 2008 and 2012 by ordering and confirming the distribution of wrongful death proceeds pursuant to R.C. 2105.06.

{¶ 20} Appellants' first assignment of error is, therefore, sustained.

{¶ 21} Assignment of Error No. 2:

{¶ 22} TO THE EXTENT THAT THE MAY 1, 2012 DECISION REFERS TO FUTURE PROCEEDS, THE COURT ERRED BY EXERCISING JURISDICTION OVER PROCEEDS THAT HAVE NOT YET BEEN RECEIVED BY THE ESTATE REPRESENTATIVE.

{¶ 23} In their second assignment of error, appellants argue that the probate court erred by ordering that all future wrongful death proceeds be distributed to Lilly's estate. Appellants contend that the probate court lacks jurisdiction over hypothetical future estate proceeds.

{¶ 24} Based on our finding that the probate court erred as a matter of law in ordering the wrongful death proceeds distributed to Lilly pursuant to intestate succession rather than in accordance with the wrongful death distribution statute, R.C. 2125.03, we now find appellants' argument under their second assignment of error to be rendered moot. *See* App.R. 12(A)(1)(c).

{¶ 25} Judgment is hereby reversed and the matter remanded so that the probate court may conduct a hearing and order distribution of the wrongful death proceeds in accordance with R.C. 2125.03.

RINGLAND and M. POWELL, JJ., concur.